## TERRY v. PETERSON et al.

N. 2118. Decided April 26, 1910 (108 Pac. 1106).

1. GAMING—ACTIONS FOR RECOVERY OF MONEY—DIRECTION OF VERDICT. Evidence in an action by a wife to recover the proceeds of the sale of the homestead, lost by the husband in gambling, *held* insufficient to require the court to direct a verdict in favor of plaintiff. (Page 405.)

2. GAMING—ACTIONS TO RECOVER MONEY—INSTRUCTIONS. In an action by a wife to recover money lost by her husband in gambling, the money being the proceeds of the sale of their homestead, the court charged that if the jury found that the money was gambled by the husband with the knowledge and consent of plaintiff, and not against her will, then she was not entitled to recover, since, where money is loaned or advanced with the understanding between the parties that it should be gambled, the lender becomes *particeps criminis*, and cannot recover for the money, and that, where a party advancing money to be used in gambling participates and shares in the gambling transaction thus promoted by his act, he becomes a *particeps criminis*, and he cannot recover the money. *Held*, that the charge was not objectionable as suggesting that plaintiff could not recover because she was *particeps criminis* and an accomplice to the criminal transaction, nor did it differ in principle from a requested instruction of plaintiff that to entitle her to recover the jury must find, among other things, that plaintiff's husband gambled the money without her consent, and contrary to her wishes. (Page 407.)

Appeal from District Court, Second District; *Hon. J. A. Howell*, Judge.

Action by Emma Maud Terry against Frank Peterson and Charles Creighbaum doing business as the St. Louis Gambling Hall, under the name of Peterson & Company.

Judgment for defendants. Plaintiff appeals.

AFFIRMED.

*J. D. Skeen* for appellant.

*E. T. Hulaniski* and *A. R. Heywood* for respondents.

37 Utah—26

STRAUP, C. J.

Plaintiff's husband owned in Weber County, Utah, a parcel of ground upon which they and their children lived. He sold it, and gambled away a portion of the proceeds of the sale. The plaintiff brought this action in her own name to recover the money from the defendants, alleged to have been gambled and lost by her husband at the defendants' gambling house in Ogden City. The case was tried to the court and a jury. A verdict was rendered in favor of the defendants. The plaintiff appeals.

The assignments relate to alleged errors in the charge of the court and the court's refusal to direct a verdict in favor of the plaintiff. We have no statute in this state permitting a recovery of money lost at gambling or wagering. The theory upon which plaintiff's case is predicated, and as stated in her complaint, is that the real estate, the title of which was in her husband's name, constituted their homestead; that when it was sold and conveyed her husband, in consideration of plaintiff's signing the deed of conveyance, agreed with her "that the proceeds of said sale were to be used and retained for the purpose of purchasing another homestead," and that in pursuance of such agreement they entered into a contract with another to purchase another home; that the husband, "contrary to plaintiff's instructions and against her will, without any consideration whatever placed $1641.20 of said money .in the custody of said defendants in the St. Louis Gambling Hall," their alleged place of business, "and that they have since held and they now hold said money for the use and benefit of plaintiff and her said family," consisting of two minor children.

It was shown by the evidence that at the time of the transaction referred to the plaintiff knew that her husband was, and prior thereto had been, addicted to gambling, and that he was an habitue of gambling resorts. She testified that when they concluded to "sell their home and buy another," she made him promise her before she signed the deed of conveyance "that he wasn't to gamble any of the money— that, if he hadn't done, I would never in the world have signed

the deed"—and that she exacted the promise because she
was apprehensive that he might gamble the money. She
further testified that the real estate sold was originally pur-
chased by them with her husband's money, and that the title
thereof was in his name; that they and their children re-
sided upon it, and that it was sold for the sum of $1960, to
be paid in cash, and the purchaser assume a mortgage in-
debtedness upon it; that $100 of the proceeds were paid to
her husband at the time of the sale; that he applied $50
on·the purchase price of a new home, and gambled the other
$50; that in March, 1908, $450 more of the proceeds were
paid to her husband, who applied $200 thereof on the pur-
chase price of the new home, and gambled away $250; that
on the 27th day of March of the same year the balance of
the proceeds of sale, amounting to $1410, was paid to her
husband, who with her knowledge deposited it in his own
name in the bank where he had a bank account and did a
banking business. She further testified that, before the last
payment was made, she knew that her husband had gambled
the amounts testified to by her, and that "he promised me
faithfully he would not gamble any more, and I supposed
he wouldn't gamble any more. It went on and went on, and
Mrs. Robinson (the vendor of the new home) wasn't ready
for us to pay the rest on the farm, so Mr. Terry he goes and
gambles the money in the bank. I talked to him and pleaded
with him, but it was no use. He had lost $600 or $700 of
the last money before I knew he had been gambling the last
time. I came to town, and had people go and get him out
of the gambling halls." She further testified that she made
no complaint, however, to any one except to her husband.
The plaintiff also put in evidence her husband's bank ac-
count which showed his deposits, and the amount of checks
drawn against it, from November 14, 1907, to August 1,
1908. The account showed that on the 26th day of February,
1908, when the real estate in question was sold, he had no
credit balance, and that the amount of his deposits between
the 26th day of February and the 1st day of August, 1908,
was $2310. Her husband testified in her behalf that such

deposits consisted of $1810 derived from the proceeds of
the sale, and $500 won at gambling. The account showing
the amount of checks drawn out at different times does not
show in whose favor they were drawn. He, however, testified
with respect to the checks drawn by him between the 26th day
of February, 1908, and the 1st day of August, 1908, and that
he gambled most of them "at the St. Louis Gambling Hall,"
the defendants' gambling place, amounting in the aggregate
to $1818. He further testified that sometimes he lost and
sometimes he won; that one occasion he won $875 or
$900, and took the money home in his pocket and told his
wife about it, but that some days later he returned to the
St. Louis Gambling Hall and there lost it; that during the
period in question he lost at that place all that he won there.
He also testified that he gambled at five or six other gambling
places in Ogden City, but always won at such places, and
then went to the defendants' gambling place and lost such
winnings. Counsel for plaintiff called his attention to par-
ticular checks, one by one, as shown by the bank account,
from February 26, 1908, to August 1, 1908, and asked him,
"What did you do with that?" He answered: "That was
gambled. Where? At the St. Louis Gambling Hall." No-
where is it made to appear by his testimony or by other evi-
dence in the case that he directly or indirectly gave or paid
or lost any of the money to the defendants or either of them,
or to any one for them, or that they or either of them directly
or indirectly received any from him. Each time when he
was asked what he did with the money checked out of the
bank by him on particular checks to which his attention
was called he merely answered that he gambled it at the St.
Louis Gambling Hall. He did not testify, nor was it other-
wise made to appear as to the manner in which the business
was conducted, what games he played, or with or against
whom he gambled or played, or whether the defendants or
the house won or received any of his money. All that is made
to appear in that regard is that he checked money out of the
bank on particular checks and gambled it at the St. Louis
Gambling Hall, the defendants' place of business. There

being no evidence to show that the defendants or either of them received any of the money gambled by plaintiff's husband, we need not consider the question of the alleged trust relation between the plaintiff and her husband arising out of the facts that the real estate sold was their homestead, in which the plaintiff, as a wife, had an interest, and like-. wise had an interest in the proceeds derived from the sale of it, and therefore could follow them into whosesoever hands they may have come without a lawful or valuable consideration.

Furthermore, the court was justified in refusing to direct a verdict in favor of the plaintiff in the sum of $1641.20, as requested by the plaintiff, because the evidence rendered it uncertain as to the amount of the alleged trust fund gambled at defendants' gambling hall. True, plaintiff's husband testified that he gambled at that place $1818, which was checked from his bank deposits. The amount of the deposits, consisting of $2310, checked against, was made up of $1810 derived from the proceeds of sale and $500 won at gambling. The two were commingled and checked against indiscriminately. Between the dates stated, February 26 and August 1, 1908, the whole of the bank deposits was checked out by him, $1818 of which he gambled at the defendants' place of business, and $500 of which he spent · elsewhere and for other purposes. Of the $1818 checked out and gambled by him at the defendants' place of business it cannot be ascertained how much of that amount was of the deposits made. up from the proceeds of the sale, and how much of the deposits made up from the moneys won at gambling. If the entire amount of $500 won at·gambling and deposited in the bank was included in the $1818 checked out by him and gambled at the·defendants' place, then he gambled at that place but $1318 of the alleged trust fund, or the difference between $1818· and $500. It is just as inferable that a portion of the alleged trust fund—to the extent of $500—was spent elsewhere than at the defendants' place, as that the whole of such fund was spent at their place.

For both reasons no error was therefore committed in refusing to direct a verdict as requested.

What we have said in respect of the insufficiency of the evidence to show that the defendants received any of the moneys gambled at their place by plaintiff's husband might well also dispose of the complaint made of the charge. Still, for other reasons, the plaintiff has no cause to complain of that. The court, at plaintiff's request, and in accordance with her theory, charged the jury that if they found that plaintiff's husband owned the real estate which was sold, and upon which she and her husband with their children resided as a homestead, and that, when it was sold, she signed the deed because of the agreement with her husband that the proceeds of sale should be applied to the purchase of another home, and that except for such agreement she would not have signed the deed, and if in pursuance of such agreement the husband held the proceeds of sale in trust for such purpose, and that he gambled and lost $1641.20, or any portion of the proceeds, in the gambling house of the defendants, without the plaintiff's consent and contrary to her wishes, then the plaintiff had the right to claim such money as exempt against the defendants, and was entitled to recover. The court, however, further charged the jury, to the effect, that if they found that such agreement was not had, or if they found that the money was gambled by the husband with the knowledge and consent of the plaintiff and not against her will, then she was not entitled to recover, "for the court charges you that, where money is loaned or advanced with the understanding between the parties that it should be used in gambling, such party becomes *particeps criminis*, and cannot recover in a suit for the money, and that where a party advancing money to be used in gambling participates and shares in the gambling transaction thus promoted by his act becomes *particeps criminis*, and he cannot recover in a suit for the money." The criticism made of the last instruction is that there was no evidence to "justify the court in throwing out the suggestion to the jury that she (the plaintiff) could not recover because she was *particeps criminis*,

an accomplice to the criminal transaction." We     **2**
think no such suggestion was made by the court. The
charge of the court, as was requested by the plaintiff, that,
to entitle her to recover, the jury must find, among other
things, that plaintiff's husband gambled the money without
her consent and contrary to her wishes, and the charge that,
if they found that the money was gambled with her knowl-
edge and consent or was advanced to him by her for such
purpose, then she could not recover, were but statements in
different form of the same principle. The court did not
say, nor suggest to the jury, as is contended, that the plain-
tiff was a *particeps criminis.* What the court said was that
where one lends or advances money to another with the under-
standing that it is to be used in gambling, and where such
party participates and shares in the gambling transaction
promoted by his act, he is *particeps criminis,* and cannot re-
cover. The criticism which is made of the charge is there-
fore unfounded. The court charged the jury upon the theory
of the case as stated by the plaintiff in her complaint, and
as requested by her. No other portion of the charge is in
conflict therewith, nor was there a wrong or inapplicable
principle of law announced in other portions. The plaintiff
therefore has no just cause to complain of the charge.

The judgment of the court below must therefore be affirm-
ed, with costs. Such is the order.

FRICK and McCARTY, JJ., concur.